

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>**KANG JIN HWANG,**<br><br>             Debtor. | Case No.: LA08-15337SB<br><br>Chapter 7<br><br>**OPINION DENYING LIFT STAY FOR FAILURE TO JOIN REAL PARTY IN INTEREST**<br><br>Date:  August 26, 2008<br>Time:  9:30 a.m.<br>Ctrm:  1575 |

### I. INTRODUCTION

IndyMac Federal Bank ("IndyMac Federal") brings this motion for relief from the automatic stay as the loan servicer for creditor Freddie Mac, and with respect to real property belonging to debtor Kang Jin Hwang. IndyMac Federal, is the successor to IndyMac Bank F.S.E. ("IndyMac") formerly the holder of the note, has sold the note to Freddie Mac, but continues to service the loan for Freddie Mac – or whomever else invests in the note. Freddie Mac has not joined and is not a party to this motion.

IndyMac now argues that as servicer on the loan, it is a party in interest with standing to seek relief under § 362(d) of the Bankruptcy Code.

Although IndyMac may be a "party in interest" as contemplated by § 362(d) of the Bankruptcy Code, the court holds that IndyMac is not the *real* party in interest pursuant to Rule 17 of the Federal Rules of Civil Procedure, in that it lacks the legal right to enforce the obligation secured by this mortgage. The motion cannot be granted, therefore, on procedural grounds. Pursuant to Fed. R. Civ. P. 17(a)(3), the hearing on this motion is continued

until August 26, 2008, to allow the real party in interest either to join in, ratify, or substitute into the motion. This opinion explains the reasons for not granting relief at this time, as well as the procedure required for loan servicers such as IndyMac to successfully move for relief from the automatic stay.

## II. RELEVANT FACTS

Kang Jin Hwang filed this chapter 7 case on April 22, 2008. Hwang's residence in Las Vegas, Nevada is encumbered by a first deed of trust, recorded on February 1, 2007, supporting a promissory note in the amount of $376,000. The lender on the deed of trust is identical to the payee on the promissory note, identified on both instruments as "Mortgageit, Inc." This note has since been endorsed over to IndyMac Bank, F.S.E., which has now been taken over by the Federal Insurance Depository Corporation and operates under the name IndyMac Federal. The deed of trust names MERS as "the beneficiary under this Security Instrument" and "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."[1] An Assignment of Deed of Trust dated January 29, 2008 is included with the motion, which indicates that MERS assigned and transferred to IndyMac all beneficial interest under the Deed of Trust.

## III. DISCUSSION

Pursuant to Local Rule 9013-1(a)(13)(A), the court issued an order requiring that IndyMac bring to court each declarant for whom a declaration had been submitted in support of its motion, for the purpose of presenting testimony to support the declaration. A similar order has been issued by this court in other motions for relief from the automatic stay since the beginning of this year because this court has taken notice of recent cases and academic studies that reveal the inaccuracy of payment records in the mortgage industry.[2]

In addition, since January of this year – and for reasons entirely distinct from this court's concern over the accuracy of payment records – this court has required moving parties on relief from stay motions based on a promissory note to bring to court for inspection the original promissory note.[3] This requirement applies because developments in the secondary market for mortgages (and other security interests) have caused the court to lack confidence that presenting a copy of a promissory note is sufficient to show that a movant has the right to enforce the note, or that it otherwise qualifies as a real party in interest (as required by Rules 7017 and 9014).

The court held a hearing on this motion on July 15, 2008, in order for IndyMac to present the original note and present the testimony of Erica A.

---

[1] MERS, Inc. is an entity whose sole purpose is to act as mortgagee of record for mortgage loans that are registered on the MERS System. This system is a national electronic registry of mortgage loans, itself owned and operated by MERS, Inc.'s parent company, MERSCORP, Inc.

[2] See Katherin M. Porter, *Misbehavior and Mistake in Bankruptcy Mortgage Claims*, (November 6, 2007), University of Iowa College of Law Legal Studies Research Paper Series Available at SSRN: http://ssrn.com/abstract-102796.

[3] Production of the note is excused only under circumstances such as those provided in Evidence Code Rule 1004 or Cal. Comm. Code § 3301 (as shown by competent evidence).

2

Johnson-Sect, a Vice President of IndyMac. While the court was satisfied with the declarant's testimony on the accuracy of the payment records, her passing mention of the note's "investors" led the court to inquire as to whether IndyMac had ever sold the note to a third party. It was in response to the court's question that Ms. Johnson-Sect admitted IndyMac no longer owned the note, but had sold it to Freddie Mac. Ms Johnson-Sect, evidently unaware that "owner" and "holder" are effectively synonymous, maintained that IndyMac is still the holder of the note, although Freddie Mac now owns it. Freddie Mac has not joined and is not a party to this motion.

### A. The Real Party in Interest Requirement

A motion for relief from the automatic stay, must satisfy both substantive and procedural requirements. The substantive requirements are provided by § 362(d). The procedural requirements, on the other hand, are imposed by the United States Constitution and the Federal Rules of Bankruptcy Procedure (which mostly incorporate the Federal Rules of Civil Procedure).

In the context of relief from the automatic stay, these two sets of requirements are often confused because of the similarity in language between § 362(d) and Rule 17 of the Federal Rules of Civil Procedure. Section 362(d) provides that relief from stay shall be granted "[O]n request of a party in interest." § 362(d). This is a substantive requirement, and it is relatively broad: many parties are parties in interest for the purposes of § 362(d).

But a party that seeks relief from stay must also be "the real party in interest." The real party in interest requirement is imposed by Fed. R. Civ. P. 17(a)(1).[4]

The route to the real party in interest rule for relief from stay motions is complex. Rule 4001 provides: "A motion for relief from an automatic stay . . . shall be made in accordance with Rule 9014," which provides procedural rules for contested matters.

Rule 9014 provides, in turn that many of the rules for adversary proceedings apply (with exceptions not relevant here) to contested matters. Among the adversary proceedings rules incorporated by reference in Rule 9014 is Rule 7017, which provides: "Rule 17 F.R.Civ.P. applies in adversary proceedings . . . ." We thereby arrive at Rule 17, the first sentence of which states: "Every action shall be prosecuted in the name of the real party in interest."

Under Ninth Circuit law, the real party in interest is the party with the right to sue or enforce a claim under the applicable substantive law. See, e.g., U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1038 (9th Cir. 1986); Allstate Ins. Co. v. Hughes, 358 F.3d 1089, 1094 (9th Cir. 2004); American Triticale, Inc. v. Nytco Services, Inc., 664 F.2d 1136, 1141 (9th Cir. 1981).

The term "real party in interest" is easy to confuse with the term "party in interest." "Party in interest" is a very broad concept in bankruptcy. It includes the debtor, creditors, employees, officers of a corporation, professionals active in the case, and many others. In general, a party in interest, in the bankruptcy context,

---

[4] Fed. R. Civ. P. 17 applies in all adversary proceedings pursuant to Fed. R. Bankr. P. 7017. Fed. R. Bankr. P. 7017, in turn, applies in all contested matters pursuant to Fed. R. Bankr. P. 9014. A motion for relief from stay is a contested matter, and therefore, must be brought by a real party in interest pursuant to Fed. R. Civ. P. 17(a)(1).

3

is anyone who is entitled to express a view with respect to a matter before the court.

In contrast, a "real party in interest" is a far narrower group, and is usually limited to a single party. The real party in interest is "the person who, according to the governing substantive law, is entitled to enforce the right."

It is also important to distinguish the "real party in interest" requirement from standing. Standing is constitutional requirement, grounded in Article III.[5] The "real party in interest" requirement, on the other hand, is generally regarded as one of many "prudential" considerations that have been "judicially engrafted onto the Article III requirements for standing." *See, e.g., In re Village Rathskeller*, 147 B.R. 665, at 668 (Bankr. S.D.N.Y. 1992).[6] To seek relief in federal court, a party "must meet both constitutional and prudential . . . requirements." *Morrow v. Microsoft Corp.* 499 F.3d 1332, 1339 (9th Cir. 2007); see also *In re Village Rathskeller, Inc.*, 147 B.R. at 668 (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975) for the proposition that "[t]he concept of standing subsumes a blend of constitutional requirements and prudential considerations"). To satisfy one does not necessarily mean that the other is satisfied: a party may have standing – having suffered an "injury in fact" – but this may not make it the real party in interest. *See, e.g., Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Dir. 1992). Conversely, a party may be the real party in interest, but lack standing. *See, e.g., Davis v. Yageo Corp.*, 481 F.3d 661 (9th Cir. 2007).

---

[5] "Article III of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 484, (1982); see also *Morrow v. Microsoft Corp.* 499 F.3d 1332, 1339 (9th Cir. 2007). This constitutional restriction is enforced by the minimum requirement that a "party who invokes the court's authority...show that he suffered some actual or threatened injury," *Matter of Village Rathskeller, Inc.*, 147 B.R. at 668 (citing *Valley Forge*, 454 U.S. at 464), that the injury be "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Morrow*, 499 F.3d at 1339 (citing *Hein v. Freedom Religion Found., Inc.*, --- U.S. ----, 127 S.Ct. 2553, 2555-56, 168 L.Ed.2d 424 (2007)). "These requirements have been described as the injury in fact, traceability, and redressability inquiries." Id. "An actual or threatened injury exists when a party's pecuniary interest may be affected by the outcome of a determination." *Matter of Village Rathskeller*, 147 B.R. at 668 (citing *United States v. Little Joe Trawlers, Inc.*, 780 F.2d 158, 161 (1st Cir. 1986).

[6] Of these considerations, two are of particular relevance to a party who invokes a court's authority to grant relief from the automatic stay under 11 U.S.C. § 362(d). See id. at 668-69. First, the party seeking relief "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge*, 454 U.S. at 760 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979); *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 80 (1978); *Singleton v. Wulff*, 428 U.S. 106, 113-114 (1976)). Second, "the plaintiff's complaint [must] fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Valley Forge*, 454 U.S. at 475 (citing *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153 (1970); *Gladstone*, 441 U.S. at 100; *Duke Power Co.*, 438 U.S. at 80). Both of these considerations are incorporated into Rule 17's requirement that an action be prosecuted "in the name of the real party in interest." See *Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 320 (5th Cir. 1999).

### B. The Right to Enforce a Note and Mortgage

Since the "real party in interest" is that party with the right to enforce a claim under the applicable substantive law, it is to that law that we must now turn. In particular, since a party that seeks relief under § 362(d) does so in order to enforce rights that have been stayed by § 362(a), it is also necessary to consider the substantive law that underlies those rights. This means that for relief from stay motions based on a promissory note, the court must look to the substantive law that governs promissory notes.

#### 1. Who May Enforce the Note

The court assumes without deciding that the note here at issue is a negotiable instrument, as defined in California Commercial Code ("CCC") § 3104(a), (b) and (e). It is on a standard printed form that is used in the finance industry for notes that are freely bought and sold in a manner inconsistent with treating it is a non-negotiable note. In California, the substantive law that governs negotiable instruments, such as promissory notes, is CCC Article 3. See id. § 3-102(a).

It is important to distinguish between the "holder" of a note and the possessor of a note. A note may be in the possession of an agent, who has possession on behalf of a principal. For example, where an officer of a bank is in possession of a note on behalf of the bank, the bank is the holder of the note notwithstanding the possession by the officer.

In this case, IndyMac Federal is in possession of the note, and produced the original of the note at trial. Nonetheless, according to the testimony at trial, IndyMac Federal is the loan servicing agent for Freddie Mac, the owner, and thus the holder, of the note. IndyMac's possession of the note is the same as a bank officer's possession – it is on behalf of Freddie Mac, the owner of the note and its real holder.

The only person entitled to enforce a note (with minor exceptions not relevant to this case) is the "holder" of the note. See CCC § 3-301(a). Thus, the real party in interest rule requires the holder of the note to bring the motion for relief from stay.

Transfer of the note bears with it the right to enforce the note. Indeed, unlike the ownership of contractual obligations – which can generally be transferred by an assignment – the right of enforcement for a negotiable instrument is only transferable by delivery of the instrument itself. § 3-203. This follows from the principle that only the holder of a note is entitled to enforce the note.

#### 2. The Mortgage Follows the Note

In the real estate context, it is typical for a promissory note to be secured by a mortgage on real property. The security is carried by a separate instrument – either a mortgage or, in California and some other states, a deed of trust – which must be recorded in the county records. The note represents the borrower's obligation on the debt, while the mortgage or deed of trust represents the security. The latter offers its bearer legal remedies in the event of default, while the former offers equitable remedies against the property. The two together may be referred to as a "mortgage loan."

In the primary mortgage market, a lender originates a loan to a borrower, who in turn issues the lender a note and deed of trust. This is the scenario in which the governing law developed, but is has become increasingly rare. More often now, the primary mortgage market gives way almost immediately to what is commonly termed the secondary mortgage market, in which the lender –

having completed the primary transaction – immediately sells the loan to an investor. (Even more complex and sophisticated arrangements involve the pooling of loans into portfolios which are then securitized to form Mortgage Backed Securities – an alchemy that is little understood by the general public, much less the wizards who practice it these days, and which need not concern us here.)

Notes traded on the secondary mortgage market remain secured because the mortgage follows the note. Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security"). California codified this principle in 1872, and this has long been the law in all the United States, too: when a note secured by a mortgage is transferred, "transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter." Carpenter v. Longan, 83 U.S. 271, 275 (1872). This is an equitable principle, in that "if [the security is] not assignable at law, it is clearly so in equity." Id. Clearly, the objective of this principle is "to keep the obligation and the mortgage in the same hands unless the parties wish to separate them." Restatement (Third) of Property (Mortgages) § 5.4 (1997). The principle is justified, in turn, by reasoning that the "the debt is the principal thing and the mortgage an accessory." Id. Consequently, "[e]quity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both." Id.[7]

### 3. The Mortgage Cannot Be Separated From the Note

Given that "the debt is the principal thing and the mortgage an accessory," the Supreme Court reasoned long ago that as a corollary, "the mortgage can have no separate existence." Carpenter, 83 U.S. at 274. (Hence the legal maxim cited by the Court: *accessorium non ducit, sequitur principalem*,[8] the accessory does not lead, but rather follows the principal. Id. at 276.) In arriving at this conclusion, the Court observed that "there is considerable discrepancy in the authorities," and cited from among these one holding of the Supreme Court of Ohio – "a case marked by great ability and fulness of research" – in which the Ohio court held that while notes are made negotiable by statute, "there is no such statutory provision as to mortgages, and that hence the assignee takes the latter as he would any other chose in action, subject to all the equities which subsisted against it while in the hands of the original

---

[7] Some authorities have followed a similar rationale in holding that the transfer of the mortgage likewise transfers the obligation which it secures, if a court can infer the intent to keep the mortgage and the note together. See Restatement (Third) of Property (Mortgages) § 5.4 (1997). These authorities, however, predate the adoption of the Uniform Commercial Code in all fifty of the United States. Today, courts that would otherwise be inclined to follow this inverse rule will likely be forced to disregard it if they are to give effect to UCC §§ 3-203, 3-301(a). This is because mortgage obligations are almost universally negotiable notes, whose right of enforcement is available only to the holder, and only transferable by delivery of the note itself to the transferee, as mentioned above. Id.

[8] Co. Litt. 152, a, 151, b. This maxim cited by the Supreme Court in Carpenter, is ancient, and arises from the principle of *accessio* in Roman Law. The principle appears in various forms throughout antiquity's legal sources. See, e.g., Dig. 34.2.19 (*accessio cedit principali*, the accessory gives way to the principal); other variations include *accessorium sequitur naturam sui principalem*; *res accessoria sequitur principalem*; *et in accessoriis, praestanda sunt quae in principali*; *sublato principali, tollitur et accessorium*.

holder." Id. at 275, citing Baily v. Smith et al., 14 Ohio State 396 (1863).

A *chose in action*, at first glance, does indeed appear similar to a mortgage, insofar as it is a "right to recover...personal property by a judicial proceeding," and insofar as it is transferable like personal property. Cal.Civ.Code § 953; see also McClain v. Buck, 73 Cal. 320 (1887) ("the right to take possession of personal property is a thing in action"); U.S. v. Stonehill, 83 F.3d 1156 (9th Cir. 1996) (chose in action is transferable personal property). The Supreme Court, however, disagreed, holding that "[t]here is no analogy between this case and one where a chose in action standing alone is sought to be enforced." Carpenter, 83 U.S. at 275. The "controlling consideration" that led the Court to this conclusion was its observation of the "dependent and incidental relation" that a mortgage has with the obligation it secures: "[w]hen the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents." Id. Consequently, a mortgage is unlike any other right to take possession of property that, like a *chose in action*, can stand alone, and "where no such relation of dependence exists." Id. at 276. For this reason, "an assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Id. at 274. While the note is "essential," the mortgage is only "an incident" to the note. Id.

### 4. Only the Holder of the Note May Enforce the Mortgage

It follows further from this that "a mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation that the mortgage secures." Restatement (Third) of Property (Mortgages) § 5.4 (citing Carpenter v. Longan). The Restatement supports this rule by analogy to the UCC's definition of a security interest as an "interest in personal property or fixtures which secures payment or performance of an obligation." UCC § 1-201(b)(35). As the Restatement notes, "[c]ase law construing the Code holds that a security interest is unenforceable in the absence of its underlying obligation." Id., citing Bank of Lexington v. Jack Adams Aircraft Sales, 570 F.2d 1220 (5th Cir. 1978); In re G.O. Harris Financial Corp., 51 B.R. 100 (Bankr. S.D.Fla. 1985) ("in order for a creditor to have lien rights in the property of a debtor, the creditor must hold an enforceable obligation against the debtor"); see also In re Belize Airways Ltd., 7 B.R. 604, 606 (Bankr. S.D. Fla. 1980) ("[t]o allow the assignee of a security interest [who did not also acquire the note] to enforce the security agreement would expose the obligor to a double liability, since a holder in due course of the promissory note clearly is entitled to recover from the obligor").

### 5. Only the Holder of the Note is the "Real Party in Interest."

At the court's hearing on this motion, IndyMac argued that as the noteholder's loan servicer, it has the right to seek relief from stay under § 362(d). The court agrees that if IndyMac is duly authorized to enforce the note and mortgage as agent of the noteholder, IndyMac would have the right to enforce the mortgage on the holder's behalf. The authority to enforce the mortgage on the holder's behalf may be granted to an agent. Alternatively, if the noteholder's agent has been assigned the mortgage, the holder of the note may *cause* the holder of the mortgage to foreclose the mortgage, but only if the latter is an agent of the former. The authority can be express or implied, and the Restatement advises that "[c]ourts should be vigorous in seeking to find such a relationship, since the result is otherwise likely to be a

windfall for the mortgagor" as well as a "frustration" of the mortgagee's "expectation of security." Restatement (Third) of Property (Mortgages) § 5.4, Comment e.

The right to enforce the mortgage on behalf of the noteholder does not, however, render the noteholder's agent into the real party in interest. "As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name." Wright & Miller, 6A Federal Practice & Procedure Civ. 2d § 1553. Consequently, even if a court finds that a proper agency relationship exists between the holder of a note and the party seeking to enforce its security, this does not excuse the agent from the requirement that an action be prosecuted in the name of the noteholder, who is the real party in interest. Fed. R. Civ. P. 17(a)(1).

For the purpose of seeking relief from the automatic stay under § 362(d) of the Bankruptcy Code, this means that loan servicers may not seek relief from stay in their own name, if the relief sought is based on a promissory note, and if that note is held by another. Rather, only the holder of the note is the real party in interest. The loan servicer may still be a "party in interest" under § 362(d), and have suffered some injury in fact that would grant it standing to seek relief under § 362(d). There may be other parties, too - apart from the holder of the note – who suffer some injury in fact and constitute parties in interest when a homeowner defaults on a note's obligations and files for bankruptcy. Without ownership of the note, however, none of these parties possess the right to enforce either the note or the mortgage under the applicable substantive law. Only the holder the note possesses this right, and qualifies, therefore, as the real part in interest.

While some courts have held that a loan servicer is a real party in interest, none of these courts have based their holdings on an analysis of the law governing promissory notes. In some cases, the facts simply no not include a promissory note. In Greer v. O'Dell (In re O'Dell), for example, the Eleventh Circuit held that even prior to actual transfer, the purchaser of consumer credit card debt was a "real party in interest" for the purpose of filing a proof of claim pursuant to its Interim Servicing Agreement with the transferor. See O'Dell, 305 F.3d 1297, 1302-03 (11th Cir. 2002). Since the interim agreement delegated to the purchaser the responsibility for administering the accounts, the court held that the purchaser was the party entitled to enforce the right to payment, even though the purchaser did not yet possess the claim itself. Id. The credit card debt in this case, however, was not governed by the same law that governs promissory notes. It is for this reason that the court did not discuss the right to enforcement under UCC § 3-301, as would have been necessary in order to determine who the real party in interest is in a motion for relief from stay based on a promissory note. The O'Dell court's analysis, therefore, is distinguishable from the context of this case, because the substantive law that would determine the real party in interest is entirely different.

This distinction notwithstanding, the Greer court states in dicta that "other courts have held in similar contexts that mortgage servicers are real parties in interest," relying on Myers v. Citicorp Mortgage, Inc., 878 F.Supp. 1553, 1558 (M.D. Ala. 1995), aff'd 208 F.3d 1011 (11th Cir. 2000) (unpublished table decision) for this proposition. See O'Dell, 305 F.3d at 1303. But there is no basis for such a proposition in Myers. Rather, the holding in Myers is that the assignment of a mortgage, even if only for an instant, creates liability in the assignee

under the Truth in Lending Act, although not to the same extent as other creditors. See Myers, 878 F.Supp. at 1558. Indeed, the Myers opinion contains no discussion of the real party in interest rule whatsoever.

The one other case on which O'Dell depends for the proposition that a mortgage servicer is a real party in interest is In re Tainan, 48 B.R. 250 (Bankr. E.D. Pa. 1985). O'Dell is the only case of which this court is aware in which a court has held that a mortgage loan servicer, though not the holder of the note, is nevertheless a real party in interest to a motion for relief from the automatic stay. In re Tainan, 48 B.R. at 252. The court in Tainan correctly opens its analysis by noting that "[w]hether a plaintiff is the real party in interest is to be determined by reference to the applicable substantive state law." Id. at 252 (citing Wright & Miller ¶ 1543). The Tainan court errs, however, in its identification of the applicable substantive law by failing to consider UCC Article 3 at all. Rather, the court ignores the substantive law that applies to promissory notes, and instead makes the the court makes the somewhat redundant observation that "[u]nder Pennsylvania law, a real party in interest must be in such command of the action as to be legally entitled to give a complete acquittal or discharge to the other party upon performance." Id. Moreover, the court's only rationale for holding that the servicer is a real party in interest is the servicer's "capacity as representative for collection purposes," id. But as this court has already noted, this agency argument – the same argument advanced by Indymac at the hearing on this motion – fails as a matter of law. See Wright & Miller § 1553.[9]

---

[9] There are other cases sometimes cited for the proposition that a loan servicer is a real party in interest, but in fact, these cases do not actually go so far as to decide the issue.

## IV. CONCLUSION

Consequently, if a loan servicer wishes to seek relief from the automatic stay, either as agent or nominee of the

---

For example, in Bankers Trust (Delaware) v. 236 Beltway Inv., 865 F.Supp. 1186, 1191 (E.D. Va. 1994), the trustee of a securitized pool of mortgages brought suit on one of the pooled notes, something which a trustee – quite apart from an agent – is fully capable of doing as a real party in interest. See Wright & Miller ¶ 1548 ("The trustee of an express rtust may sue in his own name as the real party in interest..."). Having acknowledged that the trustee was a real party in interest, the court goes on to merely speculate in dicta that "the servicer, as receiver and collector of moneys due under the mortgages, may also have standing to sue for deficiencies," even though the servicer was not a party to the action. See Bankers Trust, 865 F.Supp. at 1191.

In In re Woodberry, 383 B.R. 373 (Bankr. D.S.C. 2008), the court reached the right conclusion in holding that a loan servicer who was also the holder of the note was the real party in interest to move for relief from stay, but based its holding on a flawed legal analysis. The court determined that ownership of the note could establish that the servicer was a "creditor" and therefore a "party in interest" under § 362(d), noting that "[t]he owner or holder of a note has a right to payment." In re Woodberry, 383 B.R. at 378. When considering whether the servicer was also a *real* party in interest, however, the court curiously ignored the substantive law that would determine this – despite having just cited it – and instead, concluded its discussion of real party in interest by conflating it with standing: "it seems the better view that a loan servicer, with a contractual duty to collect payments and foreclose mortgages in the event of default, has standing to move for relief from stay in the Bankruptcy Court." Id. at 379 (basing its holding on Tainan, Bankers Trust, and O'Dell). Regardless of its rationale, the movant in Woodberry was the actual noteholder, and therefore the real party in interest.

noteholder, the servicer may do so only if the noteholder either joins or ratifies the motion. Absent joinder or ratification, the noteholder must substitute into the servicer's place, and prosecute the motion on its own. Fed. R. Civ. P. 17(a)(3).[10] If the servicer has mistakenly failed to seek relief in the noteholder's name, the court must allow a reasonable time for the noteholder to join or substitute into the action. Id.

IndyMac, by its own admission, is not the holder of the note on which this motion is based, and therefore lacks the authority to enforce the note. Since it lacks the authority to enforce the note, IndyMac also has no authority whatsoever to enforce the mortgage on Kang Jin Hwang's Las Vegas residence.

As the servicer on this loan, it is true that IndyMac may have suffered some "injury in fact" which would grant it standing to seek relief from stay. It is likely, moreover, that IndyMac is a "party in interest" under § 362(d). The fact remains, however, that IndyMac does not possess the rights necessary under Article 3 of the California Commercial Code to qualify as the real party in interest under Fed. R. Civ. P. 17(a). If IndyMac wishes to prosecute this motion on behalf the note's current holder or holders, it may do so only if all real parties in interest join in this motion, or otherwise ratify it. Pursuant to Fed. R. Civ. P. 17(a)(3), the court continues this motion until August 26, 2008, to provide IndyMac a reasonable time for the real party in interest to either ratify, join, or be substituted into this motion.

Dated: September 4, 2008

_____
Hon. Samuel L. Bufford
United States Bankruptcy Judge

---

[10] Rule 17(a)(3) provides:
> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

# PROOF OF SERVICE

I certify that a true copy of this **OPINION DENYING LIFT STAY FOR FAILURE TO JOIN REAL PARTY IN INTEREST** was served on SEP 10 2008.

Kang Jin Hwang
1635 4th Street
Los Angeles, California 90019

Robert K. Lee, Esq.
3435 Wilshire Boulevard
Suite 2741
Los Angeles, California 90010

William G. Malcolm, Esq.
Malcolm Cisneros, A Law Corporation
2112 Business Center Drive
2nd Floor
Irvine, California 92612

Sam S. Leslie, Trustee
6310 San Vicente Boulevard
Suite 320
Los Angeles, California 90048

U.S. Trustee
Department of Justice
725 South Figueroa Street
26h Floor
Los Angeles, California 90017

Dated: SEP 10 2008

_____
DEPUTY CLERK