1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ENTERED**

OCT 29 2008

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:              Deputy Clerk



**FILED**

OCT 29 2008

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

In re:

**KANG JIN HWANG,**

                    Debtor.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: LA08-15337SB

Chapter 7

**AMENDED OPINION DENYING RELIEF
FROM AUTOMATIC STAY**

Date:   September 24, 2008
Time:   9:30 a.m.
Ctrm:   1575

## I. Introduction

IndyMac Federal Bank ("IndyMac Federal") brings this motion, which the court grants, to reconsider its denial of relief from the § 362[1] automatic stay to foreclose on real property belonging to debtor Kang Jin Hwang in Las Vegas. The property is security for a promissory note that was sold to the Federal Home Loan Mortgage Corp. ("Freddie Mac"), which has not joined and is not a party to this motion.   Freddie Mac, in

turn, has most likely sold the note to unknown third parties for securitization.

After trial on the motion for relief from stay, and several rounds of briefing, the question remains: to whom is the debt owed (i.e., who owns the promissory note)? *See In re Gavin,* 319 B.R. 27, 31 (B.A.P. 1st Cir. 2004) (same). The court denies the motion on two procedural grounds:  IndyMac Federal is not the real party in interest pursuant to Rule 17 of the Federal Rules of Civil Procedure, and the joinder of the owner of the note is required by Rule 19.

Subject to these procedural infirmities, the court finds that IndyMac Federal is entitled to enforce the note under California law (and the Uniform Commercial Code ("UCC")): IndyMac Federal remains the holder of the note, notwithstanding the sale, because it has

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C.A. §§ 101-1532 (West 2008) and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

possession of the note and the note is payable to its predecessor IndyMac Bank, F.S.E. ("IndyMac Bank").

## II. RELEVANT FACTS

Kang Jin Hwang filed this chapter 7 case on April 22, 2008. Hwang's residence in Las Vegas, Nevada is encumbered by a first deed of trust recorded on February 1, 2007, supporting a promissory note in the amount of $376,000. The original payee on the promissory note, as well as the beneficiary of the deed of trust, is Mortgageit, Inc. ("Mortgageit"). Apparently, at some time before this case was filed, Mortgageit transferred the note to IndyMac Bank. After this motion was filed, IndyMac Bank was taken over by the Federal Deposit Insurance Corporation ("FDIC") and put into a conservatorship that now operates under the name IndyMac Federal, which has substituted into this motion. (Because IndyMac Bank, IndyMac Federal and the conservatorship have an identity of interests, they are referred to collectively here as "IndyMac.")

The deed of trust names MERS as "the beneficiary under the Security Instrument as a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."[2] By Assignment of Deed of Trust dated January 29, 2008, which is attached to the motion, MERS transferred the deed of trust to IndyMac. Thus, MERS is no longer a party in interest as to this loan.

IndyMac sold the note to unidentified "investors" through Freddie Mac, apparently at some time prior to the filing of this bankruptcy case. Most likely, Freddie Mac sold the note into a securitization trust.[3] IndyMac does not know who owns the note today, although it still has possession of the note and there is nothing on the note to indicate that it has been transferred. Neither Freddie Mac nor any of the investors has joined in this motion. In addition, IndyMac has failed to provide any documents showing its sale of the note or its status as a servicing agent for the note's new owner.

IndyMac filed this motion for relief from the automatic stay on May 23, 2008, and set it for hearing on June 24. The motion included a declaration by Erica A. Johnson-Sect, an IndyMac vice president, providing the factual grounds for the motion. Copies of the promissory note and the deed of trust are attached to her declaration. Pursuant to Local Rule 9013-1(a)(13)(A), the court issued an order on June 10 requiring that IndyMac bring to court each declarant for whom a declaration had been submitted in support of its motion, for the purpose of presenting testimony to support the declaration.[4]

Erica A. Johnson-Sect, a Vice President of IndyMac, testified at the trial on this motion on July 15, 2008,[5] and brought the original note to court. While the court was satisfied with the declarant's testimony on the accuracy of the payment records, she testified that IndyMac no longer owned the note, but had sold it to investors through Freddie Mac. The court finds her testimony credible on this point.

---

[2] MERS, Inc. is an entity whose sole purpose is to act as mortgagee of record for mortgage loans that are registered on the MERS System. This system is a national electronic registry of mortgage loans, itself owned and operated by MERS, Inc.'s parent company, MERSCORP, Inc.

[3] *See, e.g.,* James R. Barth et al., *A Short History of the Subprime Mortgage Market Meltdown* 5 fig.2 (Milken Institute 2008), *available at* http://www.milkeninstitute.org/

publications/publications.taf?function=detail&ID=38801038&cat=Papers (showing that approximately 85% of all home mortgages originated in 2006 and 2007 were securitized).

[4] The court requires such testimony because it has found that numerous declarants in relief from stay motions are not competent to testify as to the information included in their declarations. *See, e.g., In re Vargas,* __ B.R. __ (Bankr. C.D. Cal. 2008) (finding that the declarant was a low level clerk who was not competent to provide any relevant testimony contained in his declaration).

[5] The hearing was continued from June 28 to July 15 at movant's request, because Ms. Johnson-Sect was not available to testify on June 28.

Ms. Johnson-Sect also testified that IndyMac has brought this motion as the duly authorized servicing agent for the new owner of the note. The court disbelieves this testimony, particularly in view of (a) her testimony that she does not know who owns the note at the present time, and (b) the failure to offer in evidence any servicing agreement with the new owner.

## III. DISCUSSION

IndyMac argues that it is entitled to enforce the note because it possesses the note and the note shows it as transferee and no indorsement transferring it to any other party. IndyMac also argues that the court may not raise *sua sponte* any deficiencies in the evidence it has presented to the court.

A motion for relief from the automatic stay must satisfy both substantive and procedural requirements. The substantive requirements are provided by § 362(d). The procedural requirements are imposed by the United States Constitution (due process) and the Federal Rules of Bankruptcy Procedure (which mostly incorporate the Federal Rules of Civil Procedure). The applicable rules here are the "real party in interest" rule and the "required joinder" rule.

The court finds that IndyMac is entitled to enforce the note, notwithstanding the sale to Freddie Mac. However, in coming to federal court, IndyMac must comply with the applicable procedures in this court. Two of these rules, the real party in interest rule and the required joinder rule, each requires IndyMac to join the present owner of the note in this motion for relief from stay, which it has refused to do.

### A. Right to Enforce the Note

Since a party (such as IndyMac in this case) that seeks relief under § 362(d) does so in order to enforce rights that have been stayed by § 362(a), it is necessary to consider who is entitled to enforce the note under the substantive law that governs those rights. Thus, for a relief from stay motion based on a promissory note, the court must look to the substantive law that governs promissory notes.

Bankruptcy law does not provide for the enforcement of promissory notes generally. In the absence of bankruptcy law, the legal obligations of the parties are determined by the applicable non-bankruptcy law, which is usually state law. *See, e.g., United States v. Butner,* 440 U.S. 48, 54-55 (1979).

In the United States, the law of promissory notes is not unified at the federal level. Instead, each state has its own law on promissory notes. However, every state has adopted a version of the UCC to govern negotiable promissory notes. Thus, we turn to the California Commercial Code ("CComC"), the California version of the UCC.

### 1. Relevant Law of Negotiable Instruments

The substantive California law that governs negotiable instruments is CComC Division 3 (the California version of UCC Article 3). *See* CComC § 3102(a). A negotiable instrument[6] (or more briefly, for

---

[6] "Negotiable instrument" is defined in § 3104(a) (UCC § 3-104) as follows (with certain exceptions not relevant in this case):

> (a) "[N]egotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it is all of the following:
>
> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder.
>
> (2) Is payable on demand or at a definite time.
>
> (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to

Division 3 purposes, an "instrument")[7] typically takes one of two forms: a promissory note (designated as a "note"), or a draft (such as a check).[8] This case involves a note secured by a deed of trust.

An instrument (including a secured note) may only be enforced by the "holder" of the note (with minor exceptions not relevant to this case). *See* CComC § 3301(a); UCC § 3-301(a). For an instrument payable to an identified person (such as the note in this case), there are two requirements for a person to qualify as a holder: (a) the person must be in possession of the instrument, and (b) the instrument must be payable to that person. *See* CComC § 1201(20); UCC § 1-201(20).

The payee of an instrument may negotiate it by indorsing it and delivering it to another person, who then becomes its holder[9] (and entitled to enforce it). Commercial Code § 3201 (UCC § 3-201) defines "negotiation" as follows:

> (a) "Negotiation" means a transfer of possession ... of an instrument by a person other than the issuer to a person who thereby becomes its holder.

> secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

[7] For the purposes of Division 3, "[i]nstrument means a negotiable instrument." *Id.* § 3104(b) (internal quotations omitted).

[8] *See id.* § 3104(e); *see also* cmt. 4: "Instruments are divided into two general categories: drafts and notes." Negotiable instruments also include cashiers checks, teller's checks, money orders, travelers checks and certificates of deposit.

[9] In some circumstances, the transferee may obtain better rights than the transferor, by virtue of being a holder in due course. *See* CComC § 3305(b); UCC § 3-305(b). No such issue arises in this case.

(b) . . . [I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.

A fundamental feature of negotiable instruments is that they are transferred by the delivery of possession, not by contract or assignment. The transfer of an instrument "vests in the transferee any right of the transferor to enforce the instrument . . . ." CComC § 3203(b); UCC § 3-203(b). Thus, the right to enforce a negotiable instrument is only transferable by delivery of the instrument itself. CComC § 3203; UCC § 3-203.

The transfer of a negotiable instrument has an additional requirement: the transferor must indorse the instrument to make it payable to the transferee. *See* CComC § 3205(a); UCC § 3-205(a). Alternatively, the transferor may indorse the instrument in blank, and thereby make it enforceable by anyone in its possession (much like paper currency). *See* CComC § 3205(b); UCC § 3-205(b). If the transferor makes a transfer without indorsing the instrument, the transferee has a right to demand indorsement by the transferor. *See* CComC § 3203(c); UCC § 3-203(c).

## 2. Who May Enforce the Note in this Case

IndyMac contends, and the court assumes without deciding, that the note here at issue is a negotiable instrument, as defined in the CComC § 3104(a), (b) and (e). The note is on a standard printed form that is used in the finance industry for notes that are freely bought and sold in a manner inconsistent with treating it as a non-negotiable note. Thus IndyMac must be the holder of the note to entitle it to enforce the note (including bringing this relief from stay motion). *Accord, In re Foreclosure Cases*, 521 F. Supp. 2d 650, 653 (S.D. Ohio 2007) ("To show standing . . . the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed.").

In this case, the note is payable to IndyMac (pursuant to its negotiation from Mortgageit to IndyMac), and IndyMac had possession of the note at the time that the motion was filed. Under these facts, IndyMac qualifies as the holder of the note.

There is a second scenario, not supported by the evidence in this case, in which IndyMac would have a right to enforce the note. If IndyMac held the note on behalf of the new owner (Freddie Mac or its subsequent transferee), this would constitute possession by the new owner, and IndyMac would be entitled to seek relief from stay on the new owner's behalf (provided that it joined the new owner in the motion).[10]

Notably, however, IndyMac does not contend that it holds the note as an agent on behalf of Freddie Mac or its transferee. Indeed, it is doubtful that IndyMac could make such a claim, because IndyMac does not know who owns the note. Thus, this argument is not available.

### 3. Sale of the Note to Freddie Mac

In this case IndyMac sold the note to Freddie Mac, which in turn most likely sold it again as part of a securitization transaction. Insofar as the record before the court discloses, the owner of the note today is unknown.

In this case, IndyMac has not delivered the note to Freddie Mac (or its successor): IndyMac still possesses the note. In addition, the note bears no indication of a transfer: it still shows IndyMac as the payee (pursuant to the indorsement from Mortgageit). In consequence, IndyMac remains the holder of the note and is entitled to enforce it under CComC § 3301(a) (UCC § 3-301(a)): the right to enforce the note has not yet passed to Freddie Mac or its successor owner of the note. This interpretation of § 3203 is supported by Note 1, which states in relevant part:

> [A] person who has an ownership right in an instrument might not

be a person entitled to enforce the instrument. For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3203(a) until it is delivered to Y.

An instrument is a reified right to payment. The right is represented by the instrument itself. The right to payment is transferred by delivery of possession of the instrument "by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."

The foregoing makes it clear that no successor to IndyMac presently has a right to enforce the note, because IndyMac still has possession of the note.

This raises the question of who, if anybody, is presently entitled to enforce the note in these circumstances. Two alternatives are available. First, there may be no entity that is entitled to enforce the note until its delivery to its new rightful owner is accomplished. Second, because IndyMac continues to possess the note, it may be entitled to enforce the note, even though the note is owned by another entity.

There are good policy reasons for adopting the first alternative. Disabling the transferor from enforcing the note upon its sale to a new owner encourages the parties to complete the transaction by delivery of the instrument to the new owner. In the present configuration of the home mortgage industry, this policy can be important: it would discourage an apparently common practice in the secondary mortgage market of failure to deliver notes when they are sold, often

---

[10] In this scenario, Freddie Mac (or the note's true owner) would have to join as a moving party. *See infra.*

numerous times, so that the possessor of the note may be far removed from the real owner of the note.

The second alternative also has substantial policy support. A note supporting a home mortgage ought to be enforceable, and the homeowner should be required to make the payments owing. If the owner fails to pay, the markets rely on the ability of the noteholder to bring foreclosure proceedings to realize the value of the note. As the court in *In re Foreclosure Cases* stated: "This Court is well aware that entities who hold valid notes are entitled to receive timely payments in accordance with the notes. And, if they do not receive timely payments, the entities have the right to seek foreclosure on the accompanying mortgages." 521 F. Supp. 2d at 654.

Interposing a hiatus on the right to foreclose (apart from the automatic stay resulting from the filing of a bankruptcy case) interferes with the security of lenders in the home mortgage market. In addition, the noteholder is in position to cancel the note upon payment and to deliver the canceled note to the obligor.

IndyMac cites no case holding that, after selling (but not delivering) a secured note to an unrelated third party, the seller is entitled to enforce the note for its own account. The court's independent research has discovered two such cases, both involving transfers to corporations wholly owned by the sellers: *Edwards v. Mesch,* 763 P.2d 1169 (N.M. 1988); *Spears v. Southerland,* 23 P.2d 622 (N.M. 1933).[11] Both cases involved transfers to corporations owned by the sellers (100% in the *Edwards* case; 95% in the *Spears* case). The sale of a note to an unrelated third party, as in this case, is a very different situation.

In the court's view, the second alternative is the better view: the holder of a note is entitled to enforce it, notwithstanding sale of the note to another party, until the note is delivered to the purchaser (after indorsement, if appropriate). This assures that, notwithstanding the sale of the note and the failure to deliver the note pursuant to the sale, a holder exists that may enforce the note

---

[11] *Spears* was decided in 1933, long before the drafting of the UCC that governs this case.

against the obligor. Thus, the court holds that, notwithstanding the sale of the note, IndyMac remains the holder of the note and is entitled to enforce it.

The debtor is not at risk in making payments on the note to IndyMac instead of the owner of the note. CComC § 3602 (UCC § 3-602) provides that any payment to a "person entitled to enforce the instrument" must be credited against the note, even if the debtor knows that a different party is claiming ownership of or an interest in the note.[12]

## B. Real Party in Interest

IndyMac's substantive right to enforce the note, as the holder, does not dispose of the motion before the court. In coming to federal court to enforce this right, IndyMac must comply with the applicable procedures of federal court. Two such procedures stand in the way of granting the motion for relief from stay in this case. The first procedural problem arises from the real party in interest rule.

Rule 17 of the Federal Rules of Civil Procedure provides: "An action must be prosecuted in the name of the real party in interest."[13] The purpose of this rule is to

---

[12] CComC § 3602(a) provides in relevant part:

> [A]n instrument is paid to the extent payment is made (i) by or on behalf of a party obliged to pay the instrument, and (ii) to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under Section 3-306 by another person.

[13] Rule 17 provides in relevant part:

> (a) Real Party in Interest.
>
> (1) Designation in General.

require that an action be brought "in the name of the party who possesses the substantive right being asserted under the applicable law . . . ." 6A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1541 (1990) ("WRIGHT").

The analysis making the real party in interest rule applicable to relief from stay motions is complex.  Rule 4001 provides: "A motion for relief from an automatic stay . . . shall be made in accordance with Rule 9014," which provides procedural rules for contested matters.  Rule 9014 provides, in turn, that many of the rules for adversary proceedings apply (with exceptions not relevant here) to contested matters.  Among the adversary proceedings rules incorporated by reference in Rule 9014 is Rule 7017, which provides: "Rule 17 F.R.Civ.P. applies in adversary proceedings . . . ."  We thereby arrive at IndyMac's obligation to comply with Rule 17. Thus, a party that seeks relief from stay must be a "real party in interest."

## 1. Real Party in Interest After Securitization

If a loan has been securitized, the real party in interest is the trustee of the securitization trust, not the servicing agent. *See LaSalle Bank N.A. v. Nomura Asset*

> An action must be prosecuted in the name of the real party in interest. . . .
>
> (3) Joinder of the Real Party in Interest.
>
> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

*Capital Corp.,* 180 F. Supp. 2d 465, 469-71 (S.D.N.Y 2001) (*"LaSalle-Nomura"*); *accord, LaSalle Bank N.A. v. Lehman Bros. Holdings, Inc.,* 237 F. Supp. 2d 618, 631-34 (D. Md. 2002) (*"LaSalle-Lehman"*).  This rule does not turn on who is in possession of the note.

In the *LaSalle-Nomura* case, the bank brought an action against Nomura Asset Capital Corp., the asset securitization trustee, "as Trustee for Certificate Holders of Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates, Series 1997- D5."  Defendants moved to dismiss, in part on the grounds that the real party in interest, pursuant to Rule 17, was the mortgage servicer.  In denying the motion, the court found that the real party in interest was the trustee of the trust (the plaintiff in the case), and not its loan servicer (which had not been joined in the litigation). *LaSalle-Nomura,* 180 F. Supp. 2d at 469-71.

The only reported opinion discovered that disagrees with this conclusion is *In re Tainan,* 48 B.R. 250 (E.D. Pa. 1985), an early case that gives no analysis for its conclusion that a servicing agent is a real party in interest in seeking relief from the automatic stay. *See id.* at 252.  The court finds the *Tainan* case unpersuasive.

In this case, although it is most likely that the note here at issue has been included in a securitization, IndyMac has refused to provide any information about the present owner of the note, to join the owner as a moving party, or to provide copies of any of the relevant contracts.  Because IndyMac has not provided the relevant documents, the court cannot determine the identity of the real party in interest.[14]

If the note is part of a securitization, the burden of joining the owner of the note is not substantial.  A securitization typically involves the creation of a trust, the appointment of a trustee, a transfer to the trust of some ten thousand secured real estate notes (such as the one involved in this case) and the sale of interests in the trust to a substantial number of investors. *See*

---

[14] *Cf. In re Viencek,* 273 B.R. 354, 357-59 (Bankr. N.D.N.Y. 2002) (requiring that servicing agent amend a proof of claim to identify the owner of the claim).

*generally*, Katherine Porter, *Mistake and Misbehavior in Bankruptcy Mortgage Claims*, 87 TEX. L. REV. __, __ (2008). The trustee of the trust is authorized, pursuant to trust law, to act on behalf of the trust. Thus only the trustee, and not the investors, should be joined as the owner of the note at issue. Indeed, this is exactly what happened in both *LaSalle-Nomura* and *LaSalle-Lehman*.

The right to enforce a note on behalf of a noteholder does not convert the noteholder's agent into a real party in interest. "As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name." 6A WRIGHT § 1553. Consequently, even if the court had found that a proper agency relationship exists between the holder of the note and the party seeking to enforce its security, this does not excuse the agent from the requirement that an action be prosecuted in the name of the noteholder, who is the real party in interest. FED. R. CIV. P. 17(a)(1). Thus, even if IndyMac is the loan servicer for the unidentified owner of the note here at issue (a fact that IndyMac has failed to prove), it is not the real party in interest that is required to bring the motion before the court.[15]

The court concludes that the real party in interest has not joined in the motion before the court. Indeed, neither the court nor IndyMac even knows who the real party in interest is. Pursuant to Rule 17(a)(3), the court must give IndyMac a reasonable amount of time to accomplish this joinder. Despite two continuances (totaling more than two months) to accomplish this joinder, IndyMac has refused to join the owner of the note in this motion. Thus, the motion must be denied on these grounds.

---

[15] Counsel for IndyMac has failed even to mention either *LaSalle* case in any of the three briefs that it has filed in this matter, and has thus forfeited the right to attempt to distinguish them.

## 2. Contrast of "Real Party in Interest" with "Party in Interest" and Standing

The concepts of "party in interest" and "standing" are frequently confused with the concept of "real party in interest." This confusion is reflected in the papers before the court, and occasionally in the case law. These concepts are quite different form the concept of real party in interest. Furthermore, there is no doubt in this case that while IndyMac is not the real party in interest (that must join in the motion) it both has standing and is a party in interest.

### a. Party in Interest

"Party in interest" is a very broad concept in bankruptcy. It includes the debtor, creditors, employees, officers of a corporation, professionals active in the case, and many others. In general, a party in interest, in the bankruptcy context, is anyone who is entitled to express a view with respect to a matter before the court. Several opinions have held that a real estate loan servicer is a party in interest with respect to the enforcement of a loan. *See, e.g., Greer v. O'Dell*, 305 F.3d 1297, 1302-03 (11th Cir. 2002).

### b. Standing

It is important to distinguish the "real party in interest" requirement from the "standing" requirement. Standing is constitutional requirement, grounded in Article III of the U.S. Constitution.

### i. The Standing Requirement

The U.S. Supreme Court has stated the standing requirement as follows: "To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 128 S. Ct. 2759, 2768 (2008).

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Hence, "a defect in

standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." *U.S. v. AVX Corp.*, 962 F.2d 108, 116 n. 7 (1st Cir.1992).

The inquiry into standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498 (1975). "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Id.*

Apart from this minimum constitutional mandate, the Supreme Court recognizes other limits on the class of persons who may invoke the courts' decisional remedial powers. *Id.* at 499. These prudential limitations are self-imposed rules of judicial restraint, and principally concern whether the litigant (1) asserts the rights and interests of a third party and not his or her own, (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches. *See In re Newcare Health Corp.* 244 B.R. 167, 170 (B.A.P. 1st Cir. 2000).

### ii. Contrast with Real Party in Interest

In the context of relief from the automatic stay, the requirements of standing and real party in interest are often confused because of the similarity in language between § 362(d) and Rule 17 of the Federal Rules of Civil Procedure. Section 362(d) provides that relief from stay shall be granted "[O]n request of a party in interest." This is a substantive requirement, and it is relatively broad: many parties are parties in interest for the purposes of § 362(d). IndyMac rightly argues that it qualifies as a party in interest for this motion.

The "real party in interest" requirement, on the other hand, is generally regarded as one of many "prudential" considerations that have been "judicially engrafted onto the Article III requirements for standing." *See, e.g., In re Village Rathskeller,* 147 B.R. 665, at 668 (Bankr. S.D.N.Y. 1992). To obtain relief in federal court, a party must meet both the constitutional requirements

(standing) and the prudential requirements (including real party in interest). *Morrow v. Microsoft Corp.* 499 F.3d 1332, 1339 (9th Cir. 2007); *see also Village Rathskeller, Inc.,* 147 B.R. at 668 (citing *Warth v. Seldin,* 422 U.S. 490, 498 (1975) for the proposition that "[t]he concept of standing subsumes a blend of constitutional requirements and prudential considerations"). A party may have standing – having suffered an "injury in fact" – but this may not make it the real party in interest. *See, e.g., Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992). Conversely, a party may be the real party in interest, but lack standing. *See, e.g., Davis v. Yageo Corp.*, 481 F.3d 661 (9th Cir. 2007).

Given that IndyMac has possession of the note here at issue, no detailed analysis is required to show that it clearly meets the standing requirements. *Accord, In re Conde-Dedonato,* 391 B.R. 247, 250-51 (Bankr. E.D. N.Y. 2008) (standing to file a proof of claim).

This case is thus different from *In re Hayes,* 393 B.R. 259 (Bankr. D. Mass. 2008), where the movant seeking relief from stay failed to show that it ever had any interest in the note at issue. In that case, the court found that the movant lacked standing altogether to bring the motion because it failed to show that the note was ever transferred to it, and thus it had no rights of its own to assert. *See id.* at 266-68; *accord, In re Maisel,* 378 B.R. 19, 20-22 (Bankr. D. Mass. 2007) (denying standing where movant did not acquire note until after filing motion for relief from stay).

### 3. Sua Sponte Raising of
### Real Party in Interest Issue

IndyMac argues that it is improper for the court to raise *sua sponte* the issue of whether IndyMac is the real party in interest for this motion. The court overrules this objection.

The governing principle on this issue was articulated more than sixty years ago by Judge Learned Hand, perhaps the most distinguished U.S. jurist who never sat on the U.S. Supreme Court. Judge Hand stated: "A judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty which he cannot discharge by remaining inert." *United States v. Marzano,* 149 F.2d 923, 925 (2d Cir. 1945).

The continuing vitality of this principle is shown in *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 Bankr. 325, 335 (S.D.N.Y. 2008), where the district court quoted this statement from Judge Learned Hand in rejecting a similar attack on the bankruptcy court's *sua sponte* raising the issue of the qualification of a foreign debtor to obtain recognition of a foreign proceeding under § 1517. The district court specifically approved the bankruptcy court's procedure in requiring an evidentiary hearing *sua sponte* (as the court has done in this case), pursuant to which the bankruptcy court had found that the evidence was insufficient to show that the foreign proceeding qualified for recognition as either a main proceeding or a nonmain proceeding.

The propriety of the court's raising *sua sponte* the real party in interest qualifications of IndyMac is specifically supported in addition by the only circuit court decision to address this issue, *Weissman v. Weener*, 12 F.3d 84, 85-86 (7th Cir. 1993), which affirmed the district court's raising *sua sponte* the Rule 17 issue. IndyMac concedes that this is the Seventh Circuit rule.

IndyMac contends that there is a split among the circuits on this issue, and that the Sixth Circuit has adopted the opposite view in an ancient case, *Kardo Co. v. Adams*, 231 F. 950 (6th Cir. 1916). However, IndyMac (and perhaps the *Weissman* court as well) have misread the *Kardo* case. The issue in *Kardo*, which the trial court raised *sua sponte,* was quite different: whether the corporate plaintiff was in fact a corporation at all, and thus had capacity to sue, in light of its apparently defective incorporation under Ohio law. The circuit court found that the defendant could not raise the lack of corporate status as a defense, under the facts of the case. *See id.* at 959-72.

The circuit court's additional comment in *Kardo,* that the corporation was the real party in interest, is given no analysis at all (after fourteen pages of analysis of the plaintiff's corporate status), and is purely *dicta.* In addition, the court made no reference at all to Equity Rule 37 (the predecessor of Rule 17), which contained the "real party in interest" language now found in Rule 17. This court concludes that the Sixth Circuit's reference to "real party in interest" in *Kardo* is a different

concept from that found in Rule 17, and is of no relevance in this case.

## C. Required Joinder of Parties

Rule 17 is not the end of the procedural difficulties before the court. Movant must also comply with the joinder requirements of Rule 19 by bringing before the court every person with an interest in the note.

Rule 17 must be interpreted together with Rule 19, which requires the joinder of parties in appropriate circumstances. *See* 6A WRIGHT § 1543. IndyMac fails to satisfy the required joinder of parties rule in this case.

Joinder of a person under Rule 19 is required whenever nonjoinder would produce one of the following effects: (a) nonjoinder prevents complete relief from being accorded among those who are parties to the action; (b) the absentee claims an interest relating to the subject matter of the action and is so situated that disposing of the matter in that person's absence may (i) as a practical matter impair or impede that person's ability to protect the interest, or (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of that party's interest.[16] The

---

[16] Rule 19 provides in relevant part:

> (a) Persons Required to Be Joined if Feasible.
> (1) Required Party.
> A person who is subject to service of process . . . must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or

otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order.

If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff. . . .

(b) When Joinder Is Not Feasible.

If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

(c) Pleading the Reasons for Nonjoinder.

When asserting a claim for relief, a party must state:

(1) the name, if known, of any person who is required to be

purpose of Rule 19 is "to bring before the court all persons whose joinder would be desirable for a just adjudication" of the matter before the court. 7 WRIGHT § 1604.

It is the (b)(i) alternative that applies in this case. Proceeding with relief from stay without the joinder of the owner of the note makes it impossible (and impractical) to protect the interest of the real owner with respect to the note here at issue. Indeed, the protection of its interest is particularly problematic, given that the FDIC has taken over IndyMac, and the real owner may be reduced to making a claim in the IndyMac receivership instead of collecting on the note.

Unlike Rule 7017 (incorporating the Rule 17 real party in interest rule), Rule 7019 (incorporating Rule 19 by reference) is not applicable automatically to contested matters (including relief from stay motions) in a bankruptcy case. However, after specifying the Part VII rules that apply automatically to contested matters, Rule 9014(c) states: "The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." In this case, the court has directed that Rule 7019 applies to this motion for relief from stay.[17]

There is no precise formula for determining whether a particular non-party must be joined under Rule 19(a). The application of the rule turns on the facts of the individual case in light of the general policies of (a) avoiding multiple litigation, (b) providing the parties with complete and effective relief in a single action, and (c) protecting the absent persons form the possible prejudicial effect of

---

joined if feasible but is not joined; and

(2) the reasons for not joining that person.

[17] Rule 9014 further requires the court to give notice to the parties of an order making any non-specified rule applicable "to afford them a reasonable opportunity to comply with the procedures presecribed by this rule." The court has given this notice to IndyMac, which has refused to join the owner of the note as a party to this motion, and has refused to plead or otherwise state any reasons for its nonjoinder.

deciding the case without them.    7 WRIGHT § 1604.

IndyMac gives no explanation for its failure to join the owner of the note in this motion.    The likely reason is that IndyMac does not know who the owner is, and thus cannot have any authority to join the owner voluntarily.    If IndyMac were the duly authorized loan servicer for the owner, the servicing agreement would presumably authorize IndyMac to join the owner of the note in this motion, and the problem would disappear.  If the servicing agreement did not grant this authority, IndyMac should have obtained authority from the owner to join the owner as a movant in this case.

Consequently, if a loan servicer wishes to seek relief from the automatic stay, either as agent or nominee of the noteholder, the servicer may do so only if the noteholder either joins or ratifies the motion.    Absent joinder or ratification, the noteholder must substitute into the servicer's place, and prosecute the motion on its own.  *See* Fed. R. Civ. P. 17(a)(3).[18]

If the servicer has mistakenly failed to seek relief in the noteholder's name, the court must allow a reasonable time for the noteholder to join or substitute into the action.  *Id.*    As stated above, the court has given IndyMac more than two months to join the owner of the note, and IndyMac has failed and refused to do so.

## IV.  CONCLUSION

In conclusion, the court finds upon reconsideration that IndyMac is entitled to enforce the secured note here at issue.

---

[18] Rule 17(a)(3) provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

However, it must satisfy the procedural requirements of federal law in seeking relief from the automatic stay for this purpose. These requirements include joining the owner of the note on two separate grounds: it is the real party in interest under Rule 17, and it is a required party under Rule 19.

Because IndyMac has failed and refused to join the owner of the secured note, the motion for relief from stay is denied.

Dated: October 29, 2008

_____
Hon. Samuel L. Bufford
United States Bankruptcy Judge

1

## PROOF OF SERVICE

2

3      I certify that a true copy of this **AMENDED OPINION DENYING RELIEF FROM
AUTOMATIC STAY** was served on OCT 2 9 2008 2008.

4

5

6      Kang Jin Hwang
       1635 4th Street
7      Los Angeles, California 90019

8      Robert K. Lee, Esq.
       3435 Wilshire Boulevard
9      Suite 2741
       Los Angeles, California 90010
10

11     William G. Malcolm, Esq.
       Malcolm Cisneros, A Law Corporation
       2112 Business Center Drive
12     2nd Floor
       Irvine, California 92612
13

14     Sam S. Leslie, Trustee
       6310 San Vicente Boulevard
15     Suite 320
       Los Angeles, California 90048
16

17     U.S. Trustee
       Department of Justice
       725 South Figueroa Street
18     26h Floor
       Los Angeles, California 90017
19

20

21

22     Dated:  OCT 2 9 2008

23                                        _____
                                          DEPUTY CLERK

24

25

26

27

28

13