1           UNITED STATES BANKRUPTCY COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                        --oOo--

4 In Re:                        ) Case No. LA08-15337-SB
                                 )
5 KANG JIN HWANG,                ) Los Angeles, California
                                 ) Tuesday, July 15, 2008
6        Debtor.                 ) 9:30 a.m.
   _____)

7

8                                HEARING RE: [8] NOTICE OF
                                 MOTION AND MOTION FOR RELIEF
9                                FROM THE AUTOMATIC STAY WITH
                                 SUPPORTING DECLARATIONS REAL
10                               PROPERTY RE: 501 DELAMERE WAY,
                                 LAS VEGAS, NV 89123
11

12            TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE SAMUEL BUFFORD
13           UNITED STATES BANKRUPTCY JUDGE

14 APPEARANCES:

15 For the Moving Party,          KEVIN HAHN, ESQ.
   Indymac Bank:                  Malcolm Cisneros
16                                2112 Business Center Drive
                                  Second Floor
17                                Irvine, California 92612
                                  (949) 252-9400
18
   Court Recorder:                Earnestine Walter
19                                United States Bankruptcy Court
                                  Edward R. Roybal Federal
20                                 Building
                                  255 East Temple Street
21                                Los Angeles, California 90012

22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

*Echo Reporting, Inc.*

ii

1  Transcriber:                Sherri Lattuca
                               Echo Reporting, Inc.
2                              6336 Greenwich Drive, Suite B
                               San Diego, California 92122
3                              (858) 453-7590

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1 record.

2       THE WITNESS:  Erica A. Johnson-Sect.

3                    DIRECT EXAMINATION

4 BY MR. HAHN:

5 Q    Ms. Johnson, can you please state the name of your
6 employer for the record?

7 A    Indymac Federal Bank.

8 Q    State your position at Indymac Federal Bank, please.

9 A    Vice president, bankruptcy and foreclosure.

10 Q   How long have you been employed by Indymac Bank in your
11 current position?

12 A    One year, six months.

13 Q    Do you still hold the same position with Indymac
14 Federal Bank as you did with Indymac Bank prior to the
15 takeover?

16 A    Yes.

17 Q    How many years have you worked in the mortgage default
18 industry?

19 A    About 17 years.

20 Q    Can you briefly describe your employment history and
21 experience in the industry prior to your employment with
22 Indymac?

23 A    Yes, I started with World Savings and Loan in San
24 Leandro, California.  Relocated to San Antonio, Texas, and
25 helped to get the bankruptcy and foreclosure group started.

*Echo Reporting, Inc.*

1  In that capacity I was a unit lead and by the time I left
2  World Savings I was a -- I was a manager.  I went to Bank
3  United and I was the assistant vice president of bankruptcy
4  and compliance.  I worked for Fanny Mae for eight and a half
5  years prior to coming to Indymac Bank as a servicing
6  consultant.
7  Q    In your position as a vice president, can you tell us
8  what you're responsible for?
9  A    My biggest responsibility is to ensure that we are
10 servicing the loans as per the investor guidelines, ensuring
11 that we're giving our borrowers the best options to bring
12 their loan current prior to proceeding with foreclosure, and
13 making sure that we've turned over every stone.  Loss
14 mitigation -- although I'm not the vice president of loss
15 mitigation, it is the responsibility of everyone, especially
16 in a market like we're in today, and primarily to make sure
17 that there are no losses to -- for the borrower, for the
18 bank, for the investors.
19 Q    Can you explain who you have supervision over?
20 A    I have three managers and 35 staff.
21 Q    And they all work in the bankruptcy foreclosure
22 department?
23 A    Yes, and a high risk group, a forensic high risk
24 research group.
25 Q    Thank you.  Do you understand that you are here to

1  testify on Indymac's motion for relief from stay in the
2  bankruptcy case of Kang Jin Hwang?
3  A     Yes.
4  Q     Do you understand you are here to testify as to the
5  accuracy of the Debtor's financial situation -- financial
6  loan information as provided in your declaration?
7  A     Yes.
8            MR. HAHN:  Your Honor, may I present the witness
9  with a copy of the motion, including her declaration and
10 exhibits?
11           THE COURT:  Very well, yes, sir.  You may
12 approach, sir.  You have to go this way.
13       (Witness proffered documents.)
14           THE WITNESS:  Thank you.
15 BY MR. HAHN:
16 Q     Before we get into the specifics of the declaration, I
17 want to ask some questions about Indymac's record-keeping
18 system as it pertains to the Debtor.
19       Please describe your familiarity with the record-
20 keeping system that Indymac uses to track loans like the
21 Debtor's.
22 A     The computer system that we use at Indymac Bank is the
23 same system that I have used on and off for 17 years, so I'm
24 -- I consider myself very familiar with the system.
25           We -- what the system does is as a payment comes in,

1  whether it's from a lock box or a borrower brings it into
2  the branch or they mail in a check, our Kalamazoo, Michigan
3  office handles -- the cashiering group handles the actual
4  payment application.  All payments are posted if they're
5  received by a certain cutoff date per the depository
6  guidelines.  Any payment received after that cutoff time is
7  noted in the system that the payment was received but not
8  posted to the account.
9  Q    So are payments recorded that same day unless they miss
10 the cutoff?
11 A    Yes, payments are recorded that very same day.
12        THE COURT:  What happens then with the payment
13 that doesn't miss the cutoff date?  Or that does miss the
14 cutoff date?
15        THE WITNESS:  The note --
16        THE COURT:  When is it posted?
17        THE WITNESS:  The very next day.
18        THE COURT:  Okay.
19        THE WITNESS:  If it's a business day.
20 BY MR. HAHN:
21 Q    Can you describe further how the system works?
22 A    So for -- if the loan -- if the money is posted to the
23 account that very same day, we see a task -- it's realtime
24 that lets everyone who has access to the system know that a
25 payment has come in.  There is an overnight batch process.

1 person that batches the payments and posts the payments.
2      And as it relates to a default capacity, most of the
3 folks on the default side have access to notate the system.
4 Nobody has access to delete notes or erase notes. So
5 depending on the level and what department you're in,
6 depends on the security you have to the system.
7 Q    You've begun to explain the process a little bit, but
8 could you explain in further detail what sorts of measures
9 are in place to ensure that these records are accurate and
10 not changed without authority?
11 A    From a cashiering standpoint, the batch -- there's a
12 batching and -- excuse me, batching and balancing process
13 that happens every night, and the folks that work in the
14 cashiering department don't have your typical hours because
15 they can't leave for the day until they are -- it's a bank,
16 even though we're, you know, a back office bank-type
17 operation, so no one leaves for the day until the batches
18 are balanced. If there isn't something -- you know, can't
19 be reconciled that night, then it elevates and they have a
20 research team, a specific research team, to make sure that
21 it does get balanced within 48 hours.
22 Q    When an individual files for bankruptcy and there is a
23 default, can you lead us through the process that takes
24 place?
25 A    It depends on the Chapter. If the loan is delinquent,

1  meaning it's in foreclosure, and the borrower files
2  bankruptcy, if it's a Chapter Seven we are required by our
3  investors to immediately proceed with filing a motion,
4  anything 65 days plus delinquent.
5       On a Chapter 13 we wait, excuse me, until it's post-
6  petition delinquent 65 days before we begin to review it for
7  a motion.
8  Q    And once it gets reviewed for a motion, what occurs at
9  that point?
10 A    We do have an out source vendor but we -- my bankruptcy
11 specialists review the loans and determine which loans
12 require a motion to be filed.  They send an intercom to
13 Fidelity so that they can begin the referral process to the
14 attorneys.  Prior to sending that intercom, they do an audit
15 of the loan to make sure that the payment posting is
16 accurate, especially on a 13, making sure that none of the
17 funds were co-mingled, that all the payments that were
18 received were applied, that it's not a trust deed pay all
19 district and -- they just really ensure that the accounting
20 is accurate before we go ahead and file the motion.
21           The intercom is then sent to Fidelity, "Go ahead
22 and send the motion to the firm."  The firm prepares a
23 declaration, it comes back to me for signature.  I do a
24 look-see to make sure that from the time my bankruptcy
25 specialists reviewed the loan and the declaration is in my

1 hand that a payment didn't come in that is now not reflected
2 on the declaration.  If a payment does come in, we make --
3 we communicate so that we let our firms know that a payment
4 came in and we need to amend what we were previously going
5 to file.
6     If all is well, before I sign it I send it back to my
7 bankruptcy specialists who does a mini scrub, basically
8 something similar to what they already completed.  And then
9 I sign and then it goes back -- goes back to the firms.
10    Fidelity does have a process themselves where they
11 scrub files too, prior to referring them to the firm, but we
12 want to be extra cautious in ensuring that we're filing
13 appropriate motions.
14 Q    Do you have any reason --
15         THE COURT:  Counsel, there are a couple of things
16 I don't understand here.  I don't understand "the intercom",
17 I don't understand the reference to Fidelity.
18 BY MR. HAHN:
19 Q    Could you -- could you explain that further?
20 A    As our out source vendor, Fidelity -- we employ
21 Fidelity to help us with ensuring that the process of the
22 bankruptcy and foreclosure filing is happening within the
23 prescribed timelines.
24         THE COURT:  So what do they do?
25         THE WITNESS:  So, in this --

1           THE COURT:  Who is Fidelity and what do they do?
2           THE WITNESS:  Fidelity is our out source vendor.
3           THE COURT:  Fidelity what?  There are lots of
4  Fidelities.
5           THE WITNESS:  Fidelity National Default Services.
6  They're a vendor and as it relates to a loan in bankruptcy,
7  they will monitor the filings while they're with the
8  bankruptcy attorneys to make sure that nothing has fallen
9  through the cracks, to ensure that motions are being filed
10 timely.  They follow up on the proofs of claims, make sure
11 that they're being filed and follow up to make sure that the
12 plan confirmation dates are happening as they should.  They
13 notate their system of record with the types of things that
14 they follow up on.  We feed off of that information.  But we
15 have our own processes in-house to not only manage our
16 vendor, but to manage the portfolio because it is our
17 responsibility.
18          THE COURT:  All right.  Do they have a computer
19 system that you use?
20          THE WITNESS:  Yes, they have a web service that we
21 use.
22          THE COURT:  And to what extent do you use their
23 service as opposed to your own computer program?
24          THE WITNESS:  Our system is the system of record.
25 We don't use their system for anything but for their system

1  to upload data into ours.  For example, if they're following
2  up on a motion that has yet to be filed and they send -- an
3  intercom is an e-mail.  They send an e-mail to the firm
4  requesting status of the filing of the proof of claim.  That
5  information will load into our system so that we can see
6  that they have followed up on that, so we don't need to
7  follow up on that information.  But we don't rely on their
8  records for our -- to make business decisions.
9           THE COURT:  The records, the payment records, do
10 those go through your computer or their computer?
11          THE WITNESS:  Ours.
12          THE COURT:  Okay.
13          THE WITNESS:  They don't have access to that.
14          THE COURT:  Okay.  Go ahead, sir.
15 BY MR. HAHN:
16 Q    Do you have any -- do you have any reason to believe
17 that the Debtor disputes the accounting on the loan?
18 A    No.
19 Q    Do you have any reason to believe the Debtor disputes
20 that Indymac is the rightful holder of the note?
21 A    No.
22 Q    Are you familiar with the loan account for the Debtor,
23 Kang Jin Hwang, specifically?
24 A    Yes.
25 Q    Okay, I'd like to draw your attention to Exhibit Two of

1 the motion, the note.  Is that a true and correct copy of
2 the note that Indymac is the holder of?
3 A    Yes.
4 Q    Is Indymac Bank the rightful holder of the note?
5 A    Yes.
6 Q    Was the note in the possession of Indymac or Indymac's
7 counsel at the time you signed your declaration?
8 A    Yes.
9 Q    Okay.  Turning to the last page of your declaration, is
10 that your signature that's shown there?
11 A    Yes.
12 Q    Were you able to confirm the total amount of Indymac's
13 claim in the amount of over 404,000, as of April 28th, as
14 you stated in your declaration?
15 A    Yes.
16 Q    Were you able to confirm the delinquency amount of over
17 23,000 as stated in your declaration at that time?
18 A    Yes.
19 Q    To your knowledge, has the Debtor made any further
20 payments since the filing of the motion or your declaration?
21 A    No.
22        MR. HAHN:  Thank you.  Your Honor, I have no
23 further questions.
24        THE COURT:  Counsel, I haven't heard you elicit
25 any testimony about the deed of trust.

1           MR. HAHN:  The deed of trust?

2           THE COURT:  Yes.  I assume that the relief from

3   stay you're seeking is not to file a lawsuit against the

4   Debtor but to enforce the deed of trust.

5           MR. HAHN:  Yes.

6   BY MR. HAHN:

7   Q    Ms. Johnson-Sect, are you -- has the deed of trust been

8   assigned to Indymac Bank?

9   A    Yes.

10  Q    Is Indymac Bank the proper secured party, as far as you

11  are aware?

12  A    Yes.

13  Q    Has the assignment of the deed of trust been recorded?

14  A    Yes.

15  Q    If you turn to Exhibit One, the back of Exhibit One --

16  Exhibit Three, I'm sorry.  Is that a true and correct copy

17  of the assignment of the deed of trust?

18  A    Yes.

19          MR. HAHN:  No further questions, your Honor.

20          THE COURT:  Ma'am, you made reference to

21  investors.  Are there any investors involved in this loan?

22          THE WITNESS:  Yes.

23          THE COURT:  What investors are there and what's

24  their role?

25          THE WITNESS:  Freddie Mac.

1    THE COURT: And what is its role?

2    THE WITNESS: It -- Indymac Bank sold the loan to
3 Freddie Mac and services the loan for Freddie Mac.

4    THE COURT: So Indymac is no longer the owner of
5 the loan?

6    THE WITNESS: No.

7    THE COURT: Looks like you've got something to
8 clarify here, counsel.

9 BY MR. HAHN:

10 Q    Technically, is Indymac the holder of the note?

11 A    Yes.

12 Q    Is Indymac authorized to act on behalf of Freddie Mac?

13 A    Yes.

14 Q    Why, to your knowledge, is Freddie Mac not the moving
15 party in this motion?

16 A    Their charter prohibits them from being named in
17 motions for foreclosure sales and such.

18    THE COURT: We need some more clarification,
19 counsel. I heard testimony this note no longer belongs to
20 Indymac but is sold to -- was sold to Freddie Mac. In which
21 case, we seem to have the wrong moving party here.

22    MR. HAHN: Well, your Honor, as the witness has
23 sated, Freddie Mac is not authorized to --

24    THE COURT: That's its problem. It doesn't mean a
25 stranger can come instead and act on its behalf.

1         MR. HAHN: Well, Indymac is the servicer on the
2  note and it's servicer for Freddie Mac on this note.
3         THE COURT: It's not the real party in interest,
4  sir. The owner is the real party in interest.
5         MR. HAHN: Your Honor, I -- perhaps that's
6  something that we need to clarify further. Don't know that
7  I can do that fully today.
8         THE COURT: You have anymore testimony you want
9  Ms. Erica Johnson-Sect to give?
10        MR. HAHN: No, your Honor.
11        THE COURT: Okay, you may step down, ma'am.
12     (Witness was excused.)
13        MR. HAHN: Your Honor, if the Court doesn't
14 require anymore testimony from Ms. Johnson-Sect, I would
15 request perhaps a continuance to clarify those issues,
16 assuming that they can be.
17        THE COURT: Very well, shall we set a further
18 hearing? How long do you need for that, sir?
19        MR. HAHN: Perhaps 30 days, your Honor.
20        THE COURT: Shall we make it August 26th at 9:30?
21        MR. HAHN: Yes, your Honor.
22        THE COURT: Okay, very well. Anything further
23 today, sir?
24        MR. HAHN: I'm sorry?
25        THE COURT: Anything further today?

1           MR. HAHN:  No, your Honor.

2           THE COURT:  Very well.  Thank you, sir.

3           MR. HAHN:  Thank you.

4           THE COURT:  Just to let you know, sir, it appears

5  that apart from the ownership of the note, that you've

6  covered the matters of concern to the Court.

7           MR. HAHN:  Thank you.

8       (Proceeding concluded.)

9

10          I certify that the foregoing is a correct

11 transcript to the best of my ability from the electronic

12 sound recording of the proceedings in the above-entitled

13 matter.

14

15 _____      __9-25-08_____
   Transcriber                         Date
16
   FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
17

18 _____
   L.L. Francisco, President
19 Echo Reporting, Inc.

20

21

22

23

24

25